IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GILBERTO RAMON PALACIOS        §
                               §
VS.                            §      CIVIL NO.4:12-CV-737-Y
                               §(Criminal No.4:10-CR-188-Y(01))
UNITED STATES OF AMERICA       §

ORDER RESOLVING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255
AND ORDER DENYING CERTIFICATE OF APPEALABILITY

Now pending before the Court is defendant Gilberto Ramon Palacios's motion for relief under 28 U.S.C. § 2255, accompanied by a memorandum in support. The government filed a response to the § 2255 motion and Palacios then filed a reply. After careful consideration and review of defendant Palacios's motion under § 2255 and memorandum in support, the government's response, the reply, the file and record of this case, and the applicable law, the Court concludes that Palacios's § 2255 motion must be denied for the reasons stated by the government and as set forth here.

Gilberto Ramon Palacios seeks relief under 28 U.S.C. § 2255 on the basis that counsel at his plea and sentencing provided ineffective assistance of counsel by (1) failing to negotiate an agreement from the government to file a substantial-assistance motion on his behalf, and (2) failing to move for a mitigating-role adjustment under sentencing guideline § 3B1.2. (Mot. § 12, at pp.4-5; Memorandum in Support at 1-8.) Palacios also argues in the alternative that his plea was entered involuntarily. (Memorandum at 9-10.)

In December 2010, Palacios pleaded guilty to a conspiracy to distribute a controlled substance (cocaine) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). The Court sentenced Palacios to a term of 175 months' imprisonment, along with a three-year term of supervised release. Although Palacios filed a direct appeal, after appointed counsel filed an *Anders* brief, the United States Court of Appeals for the Fifth Circuit, finding no nonfrivolous issues on appeal, dismissed the appeal.[1] Palacios's § 2255 motion was timely filed.

*Involuntary Plea*

The Court will take Palacios's alternative ground, that his guilty plea was involuntary, first. Because a guilty plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."[2] Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness, when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances--even though the defendant may not know the specific

---

[1]*United States v. Palacios,* 454 Fed. Appx. 351, 2011 WL 6340297, at *1 (5th Cir. December 19, 2011).

[2]*United States v. Ruiz*, 536 U.S. 622, 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

detailed consequences of invoking it."[3] With "respect to a defend-ant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."[4] "[A] defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur."[5]

A guilty plea may be invalid if induced by a defense counsel's unkept promises.[6] Ordinarily, however, "a defendant will not be heard to refute his testimony given under oath when pleading guilty."[7] "Solemn declarations in open court carry a strong presumption of verity," and the "representations of the defendant, his lawyer, and the prosecutor at a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."[8] Any

---

[3]*Id.* at 630.

[4]*Id.*

[5]*United States v. Hernandez,* 234 F.3d 252, 255 (5th Cir. 2000).

[6]*United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)(citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)).

[7]*United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985)(quoting *United States v. Sanderson,* 595 F.2d 1021, 1022 (5th Cir. 1979)).

[8]*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).

documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight."[9]

Palacios's claim that his plea was not knowing and voluntary is directly refuted by his testimony and the factual resume. Palacios signed the factual resume, which recites the essential elements of the crime of conspiracy to distribute a controlled substance and his being subject to penalties including imprisonment for not more than 20 years. (Factual Resume at 1.)

At the rearraignment hearing, Palacios admitted that he committed each of the essential elements of the offense to which he pleaded guilty. (December 29, 2010 Rearraignment Transcript at 26-27.) Palacios also testified that he had discussed the case and the charges with his attorney, and "[was] fully satisfied with the representation and advice [he] received from [his] attorney." (Oct. 17, 2007, Tr. at 27.) He testified that no one had made any kind of promises or assurances to induce him to plead guilty. (Dec. 29, 2010 Tr. at 31.)  After the prosecutor noted that he was subject to an imprisonment penalty in the range of not more than 20 years, Palacios acknowledged that he was subject to that penalty range. (Dec. 29, 2010 Tr. at 35.) He also acknowledged that if his sentence was more severe than expected, that he would still be bound by his plea of guilty and would not have the right to withdraw it. (Dec. 29, 2010 Tr. at 11-12.)  The Court accepted his guilty plea, and determined that it was a "knowing and voluntary

---

[9]*See United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994).

plea supported by an independent basis in fact containing each of the essential elements of the offense charged against the defendant." (Dec. 29, 2010 Tr. at 42.)

After review of this record, Palacios has not made any showing that his entry of a plea was not knowing and voluntary. Palacios fails to show why the Court should not afford "great evidentiary weight" to the document he agreed to, and afford the "strong presumption of verity" to the prior sworn testimony that he understood the waiver of his constitutional rights and entered his guilty plea knowingly and voluntarily. Palacios never states why his guilty plea was involuntary except to argue:

> The judicial landscape certainly has substantially changed between the time Movant's attorneys induced him to plead guilty without the benefit of a plea incentive or for that matter a written plea agreement. The record demonstrates there were no delays in Movant taking the plea of guilty and in sentencing. Thus, Movant did nothing delay [sic] the proceedings, and there is no showing that Movant put either the Court or the prosecutor through the paces of a full-scale litigation. In other words, "scarce judicial and prosecutorial resources were, for the most part, preserve [sic]." (Memorandum at 9.)

It appears that Palacios believes his guilty plea was involuntary because he did not receive credit for saving judicial and prosecutorial resources. But this argument does not state a basis to claim the guilty plea was involuntary. And even if so, the record shows that Palacios did receive a three-level reduction for acceptance of responsibility "because he assisted the government in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty,

thereby permitting the government to avoid preparing for trial."
(Presentence Report (PSR) ¶¶ 24, 32.) Thus, Palacios fails to show
that his guilty plea was involuntary and unknowing.

*Ineffective-Assistance Claims*

Palacios's remaining claims are for ineffective assistance of
counsel. The now-familiar, two-pronged standard for review of
ineffective-assistance-of-counsel claims was set forth by the
Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both
> showings, it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.[10]

The burden is on the defendant to show that his counsel's
representation fell below an objective standard of reasonableness
by identifying acts or omissions of counsel "that are . . . not .
. . the result of reasonable professional judgment."[11] A district
court then determines whether, "in light of all the circumstances,
the identified acts or omissions were outside the wide range of
professionally competent assistance."[12] There is a strong
presumption that the performance of counsel "falls within the wide

---

[10]*Strickland,* 466 U.S. at 687.

[11]*Id.* at 690.

[12]*Id.*

range of reasonable professional assistance."[13] A defendant must also affirmatively prove prejudice by showing that a particular error of counsel actually had an adverse effect on the defense, an adverse effect being shown, in turn, by demonstrating a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[14] This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result."[15]

"Recognizing the 'temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence,'" the Supreme Court recently re-emphasized "that counsel should be 'strongly presumed to have rendered adequate assistance and make all significant decisions in exercise of reasonable professional judgment.'"[16]  The Supreme Court also cautioned that ineffective-assistance claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ."[17] Thus, the high court admonished that "the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.'"[18]

---

[13]*United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *see also King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir.), *cert den'd,* 489 U.S. 1093 (1989).

[14]*Strickland,* at 694 (general discussion at pp. 691-695).

[15]*Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011)(citing *Harrington v. Richter,* 131 S.Ct. 770, 791 (2011)).

[16]*Pinholster,* 131 S.Ct. at 1403 (citing *Strickland,* 466 U.S. at 690)).

[17]*Harrington v. Richter,* 131 S.Ct. 770, 788 (2011).

[18]*Id.* (citing *Strickland,* 466 U.S. at 689-690).

Palacios claims that his attorney failed to negotiate an agreement with the government to file a substantial-assistance motion in exchange for the identity of the "owners of the delivered cocaine, despite [his] willingness to assist in that endeavor." (Mot. At 4; Memorandum at 2-3.) He claims that counsel made no effort "to secure a favorable outcome in this case", and made no "efforts in offering to know 'who the owners of the cocaine were' despite knowing that it was 'not the defendant.'" (Memorandum at 3.) Palacios writes that "the record is void of any evidence of any effort by trial counsel to even attempt to negotiate a favorable plea agreement with the government in exchange to learn the real owners of the delivered drugs despite knowing [he] was just a mule in this case." (Memorandum at 3.)

Palacios's argument fails for several reasons. First, as it appears his argument is based on the failure of the government to offer him an agreement to seek a reduced sentence in exchange for information, a "defendant has no right to be offered a plea, nor a federal right that the judge accept it."[19] Second, the claim is belied by the record. After his arrest, Palacios knowingly and voluntarily waived his *Miranda*[20] rights and spoke with officers concerning the source of the cocaine. (PSR ¶ 12; Memorandum, Exhibit A.) All he told them was the cocaine came from someone he called *Jorge*, whom he met five months earlier through a mutual friend. (PSR ¶¶ 12-14; Memorandum, Exhibit A.) Palacios, however,

---

[19]*Missouri v. Frye,* 132 S.Ct. 1399, 1410 (2012)(citations omitted).

[20]*Miranda v. Arizona,* 384 U.S. 436 (1966).

never offered the name of this "mutual friend," nor did he offer any further information on who *Jorge* was or where authorities may find him. (Memorandum, Exhibit A.)  The record also shows that much of the information Palacios provided in his briefing with officers was either already known by the government, such as the address of where *Jorge* trafficked in the cocaine, or it was too vague to be helpful. (PSR ¶ 8.) Significantly, the information provided by Palacios came in his interview with officers after he knowingly and voluntarily waived his *Miranda* rights and not pursuant to any cooperation agreement with the government.

Additionally, Palacios's claim is conclusory. As Palacios had no right to be offered a plea agreement from the government, nor a right to have this Court accept it, to obtain relief he must show a reasonable probability that the information he possessed would have resulted in the government's agreeing to move this Court for a substantial-assistance reduction that this Court would have granted.[21] Palacios does not suggest what additional information he possessed that his attorney was deficient in failing to use to negotiate an agreement by the government to move this Court for substantial-assistance reduction.  And because Palacios never offers to describe the information he possessed, he also fails to show that even if the government had agreed to move this Court for a substantial assistance reduction, this Court would have granted that motion and further reduced his sentence beyond the reduction that resulted from counsel's successful objections to the PSR.

---

[21] *See Frye,* 132 S.Ct. at 1409.

(March 14, 2011 Addendum to PSR; April 11, 2011 Sentencing
Transcript at 3-4.).

Palacios next contends that his counsel was ineffective for
failing to move for an adjustment under U.S.S.G. § 3B1.2 on the
basis of a minor or minimal role. He complains that his attorney
argued to this Court at sentencing that this was a "mule sort of
case," but "failed to make the necessary legal research in order
for him to file a motion in mitigation" of his sentence. (Mot. at
5.) Under section 3B1.2(a) a defendant may receive a four-level
reduction if he was a "minimal participant in any criminal
activity."[22] Such classification only applies where "the defendant's
lack of knowledge or understanding of the scope and structure of
the enterprise and of the activities of others is indicative of a
role as a minimal participant."[23] Under section 3B1.2(b), a
defendant may receive a two-level reduction if he "was a minor
participant in any criminal activity."[24] Section 3B1.2(b) "only
applies when a defendant is '*substantially* less culpable than the
average participant.'"[25] "It is not enough that a defendant does
less than other participants; in order to qualify as a minor

---

[22]U.S.S.G. § 3B1.2(a).

[23]*Id.*, cmt n.4.

[24]U.S.S.G. § 3B1.2(b).

[25]*United States v. Villanueva,* 408 F.3d 193, 204 (5th Cir. 2005)(quoting
U.S.S.G. § 3B1.2, cmt. N. 3(A)), *cert. den'd,* 546 U.S. 910 (2005)(emphasis
added).

participant, a defendant must have been peripheral to the advancement of the illicit activity.'"[26]

While Palacios argues his role in the cocaine trafficking was that of a mule and that his sole responsibility was to deliver cocaine, he makes no effort to show there was evidence his attorney was deficient in presenting to this Court that would have showed his role in the offense was "peripheral" to advancing the cocaine trafficking.  Indeed, the evidence shows that Palacios played a critical role in delivering large quantities of cocaine to buyers. His own admissions show that he made such deliveries on more than one occasion, and he recruited Perez to assist him. (PSR ¶ 15.) His role was anything but peripheral.  Furthermore, Palacios's argument that he was essentially a "mule" in and of itself would not automatically entitle him to a reduction under § 3B1.2(b).[27]  If Palacios cannot even show that he would have qualified for the minor-participant reduction, he cannot show he would have qualified for the minimal-participant reduction.  Since any request for a mitigating-role reduction under § 3B1.2 would have been meritless, Palacios cannot show counsel's failure to raise the claim was deficient, or that he was prejudiced. [28]

---

[26]*United States v. McElwee,* 646 F.3d 328, 346 (5th Cir. 2011)(quoting *Villanueva,* 408 F.3d at 204).

[27]*See United States v. Garcia-Trejo,* 459 Fed. Appx. 465, 466-67 (5th Cir. Feb. 3, 2012)(affirming district court's finding that a courier involved with transporting more than $500,000 worth of cocaine was not peripheral), *cert. den'd*, 133 S.Ct. 130 (2012); *see also  United States v. Jenkins,* 487 F.3d 279, 282 (5th Cir. 2007)("a defendant may be a courier without being either a minimal participant or minor participant")(citation and internal citation omitted).

[28]*see generally United States v. Kimler,* 167 F.3d 889, 892 (5th Cir. 1999)("An attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the

For all of the above reasons, Gilberto Ramon Palacios's motion for relief under 28 U.S.C. § 2255 (docket no. 1) is DENIED.

*Certificate of Appealability*

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.[29] Rule 11 of the Rules Governing Section 2255 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[30] The COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[31] A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."[32]

Upon review and consideration of the record in the above-referenced case as to whether § 2255 movant Palacios has made a showing that reasonable jurists would question this Court's rulings, the Court determines he has not and that a certificate of

---

issue")(citations omitted).

[29]*See* Fed. R. App. P. 22(b).

[30]RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, RULE 11(a) (December 1, 2009).

[31]28 U.S.C.A. § 2253(c)(2)(West 2006).

[32]*Miller-El v. Cockrell,* 537 U.S. 322, 326 (2003)(citing *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

appealability should not issue for the reasons stated in this order.[33]

Therefore, a certificate of appealability should not issue.

SIGNED April 23, 2013.

_Terry R. Means_
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[33]*See* Fed. R. App. P. 22(b); *see also* 28 U.S.C.A. § 2253(c)(2)(West 2006).